UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY M. JONES,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

Case No. 1:15-CV-0148

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Dorothy Jones seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged

with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 51 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.35, 59.) She completed high school, and was previously employed as a cleaner and cashier. (PageID.60–61, 91–92.) Plaintiff applied for benefits on July 16, 2012, alleging that she had been disabled since June 18, 2012, due to depression, anxiety, and tremors in her neck, head and arms. (PageID.99, 164–65.) Plaintiff's application was denied on October 22, 2012, after which time she requested a hearing before an ALJ. (PageID.110.) On July 17, 2013, Plaintiff appeared

with her counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.52–97.) In a written decision dated August 23, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.35–51.) On December 15, 2014, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–27.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.40.) At step two, the ALJ determined Plaintiff had the severe impairment of a benign essential tremor of the hands. (PageID.40.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.42–43.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except she cannot use her hands to handle or reach more than frequently; she cannot use her hands to grasp or finger items more than occasionally; and she cannot perform more than simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes.

(PageID.43.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.45.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 49,000 jobs in the state of Michigan in the positions of retail sales, security guard, and as an aide, guide, usher, or greeter, that an individual similar to Plaintiff could perform. (PageID.92–94.) This represents a

4

significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point through August 23, 2013, the date of the decision. (PageID.47.)

## DISCUSSION

Plaintiff's Statement of Errors presents the following claims:

1. The ALJ committed reversible error by finding that Plaintiff could use her hands on more than an occasional basis due to her tremors;

2. The ALJ committed reversible error by failing to find that Plaintiff's headaches and mental impairment were severe impairments;

3. The ALJ committed reversible error by using improper boilerplate language to support her finding that Plaintiff could have performed light work; and

4. The ALJ committed reversible error by failing to follow the accurate testimony of the vocational expert.

(PageID.422.)  The Court will discuss the issues below.

**1.**

Plaintiff first claims that the ALJ's RFC determination is unsupported by substantial evidence. Specifically, Plaintiff claims that substantial evidence does not support the ALJ's conclusion that Plaintiff could use her hands more than occasionally. (PageID.422–23.) The Court disagrees.

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is a determination made by the ALJ based upon all the evidence within the record. *Walters v. Comm'r*

*of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b); *see Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005). In assessing a claimant's RFC, the Commissioner considers all of the claimant's medically determinable impairments including both severe and non-severe impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417–18 (6th Cir. 2011). It is Plaintiff's responsibility to provide the evidence that the Commissioner will evaluate in making the RFC finding. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c).

As part of her step 4 analysis, the ALJ determined that Plaintiff's RFC for light work was limited in so much as Plaintiff could only use her hands for frequent handling and reaching, and occasional grasping and fingering. In so doing the ALJ relied, in part on the opinions of a non-examining agency reviewer and a consultative examiner. (PageID.44–45.) "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.,* No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and

6

psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.")

On September 4, 2012, Dr. Karen Krieger, the consultative examiner, opined that Plaintiff could perform light work, and that "[s]he should be able to use bilateral hands for fine and gross manipulation on reaching, handling, feeling, grasping, and fingering frequently." (PageID.357.) This opinion was similar to that of the opinion of the agency reviewer, Dr. Glen Douglass who opined that Plaintiff could perform light work with no manipulative limitations. (PageID.106–07.) The ALJ gave both opinions partial weight, but noted that the Plaintiff's presentation and testimony at the administrative hearing persuaded her that Plaintiff was further impaired than the above physicians believed. (PageID.45.) Accordingly, the ALJ determined Plaintiff had the RFC to do only frequent handing and reaching with her hands, as well as occasional grasping and fingering. (PageID.43.) The ALJ determined Plaintiff was not further impaired because of her extensive activities of daily living, that including preparing meals, using a computer, reading, walking, and staining cupboards. (PageID.44, 359.) In sum, substantial evidence supports the ALJ's RFC determination that Plaintiff could frequently use her hands to handle and reach, and occasionally use her hands to grasp or finger items, and Plaintiff's first claim of error is rejected.

**2.**

At step two of the sequential disability analysis, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering her decision. *See Maziarz*

7

*v. Sec'y of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error").

Plaintiff asserts that she is entitled to relief because the ALJ failed to classify her headaches and depression as severe impairments. (PageID.423–24.) Plaintiff claims that her past suicide attempt and low GAF scores should have led the ALJ to determine that these were severe impairments. Moreover, Plaintiff argues, the ALJ's conclusion that Plaintiff was limited to simple, routine tasks, necessarily means that she had severe mental impairments. (PageID.423–24.)

On June 20, 2012, two days after Plaintiff's alleged disability onset date, Plaintiff went to the ER after overdosing on Prozac. (PageID.317.) Plaintiff had lost her job the day before, and had taken approximately thirty pills after returning home. (PageID.317.) Treatment notes indicate that after Plaintiff was treated, she was remorseful, no longer suicidal, and she was discharged after meeting with a social worker. (PageID.317.) On June 27, 2012, Plaintiff again stated she was no longer suicidal and was looking forward to remodeling her home that summer. (PageID.346.) Plaintiff stated that her depression was stable with medication. (PageID.346.) Allison Bush, an MS, LLP, examined Plaintiff, gave here a fair prognosis, and determined that Plaintiff was able to perform simple, routine, repetitive tasks. (PageID.361.) The ALJ gave this opinion significant weight. (PageID.45.) Finally, Plaintiff herself testified that her mental impairments did not prevent her from working. (PageID.69.)

The record is sparse regarding Plaintiff's headaches, especially after her alleged onset date. For example, Plaintiff complained of headaches when she was treated in the ER for her

overdose, (PageID.317), but Plaintiff did not complain of headaches to either of the consultative examiners, and headaches were not listed as a disabling condition on her application. (PageID.99, 352, 358.) Prior to her alleged onset date, on June 9, 2009, Dr. Evelyn Navarro noted that Plaintiff began experiencing headaches that had not previously occurred since her childhood. (PageID.382.) At a review of an MRI on July 21, 2009, Dr. Navarro noted that the scans showed a Chiari malformation, but that such malformations generally do not cause any symptoms. (PageID.380.) On December 1, 2010, Dr. Navarro noted Plaintiff's headaches corresponded to her missing meals, and dissipated when Plaintiff ate something. (PageID.375.) At the hearing, Plaintiff stated she did not take any pain medication when she had a headache, but rather would lie down and rest. (PageID.66.)

At bottom, however, even if Plaintiff's depression and headaches were properly characterized as a severe impairment, the ALJ's failure to recognize such does not merit relief. The ALJ found that Plaintiff suffered from a severe impairment and proceeded through all five steps of the sequential analysis. As Plaintiff herself admits, the ALJ considered these non-severe impairments at step 4 by limiting her to simple, routine tasks. (PageID.423–24.) In so doing, the ALJ discussed at length the medical evidence, including the evidence concerning Plaintiff's non-severe impairments. Accordingly, this argument is rejected.

**3.**

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). "Claimants challenging the

ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511–12 (6th Cir. 2013). The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96–7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Plaintiff focuses on a single sentence extracted from the portion of the ALJ's opinion discussing credibility and argues that it is "boilerplate" warranting reversal. (PageID.424–25.) Plaintiff's burden on appeal is higher than a dismissive labeling of a small fragment of the ALJ's factual finding regarding credibility. *See, e.g., Ralph v. Comm'r of Soc. Sec.*, No. 1:15–cv–90, 2016 WL 74422, at *7 (W.D. Mich. Jan. 6, 2016); *Morris v. Comm'r of Soc. Sec.*, No. 1:14–cv–1036, 2015 WL 9810982, at * 5 (W.D. Mich. Dec. 16, 2015); *Sutton v. Comm'r of Soc. Sec.*, 1:14–cv–1112, 2015 WL 7738355, at * 7 (W.D. Mich. Dec. 1, 2015). Here, the ALJ gave specific reasons for discounting Plaintiff's credibility including her activities of daily living and records from Dr. VanderLinde, Dr. Navarro, and Dr. Krieger. (PageID.44–45). The ALJ's factual finding regarding credibility easily passes appellate review under the deferential substantial evidence standard. Accordingly, this claim of error is denied.

**4.**

Plaintiff finally claims that the ALJ's step 5 determination is unsupported by substantial evidence because the ALJ, instead of adopting the VE's response to a hypothetical

reflecting the ultimate RFC, should have adopted the VE's response to hypothetical questions that limited Plaintiff to less than occasional handling and fingering as well as being off task twenty percent of the time. (PageID.425.) Plaintiff notes that in response to these hypotheticals, the VE testified that there would be no jobs that an individual similar to Plaintiff could perform. (PageID.94–95.)

An ALJ's finding that a Plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. While Plaintiff contends that the ALJ erred by asking "hypothetical questions which did not consider all of Plaintiff's severe impairments correctly," she provides no factual basis or meaningful argument on this issue. (PageID.425.) Accordingly, this claim of error will be denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:     March 14, 2016                /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE